# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

SHEFFIELD GROVES,

        Plaintiff,

        v.                                 Case No. 06-C-1301

MILWAUKEE COUNTY JAIL,
SHERIFF CLARKE,
CAPTAIN KEVIN NYKLEWICZ,
CAPTAIN MATTHEW PARADISE,
and DEPUTY MOATS,

        Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. # 28) AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. #40)

Plaintiff, Sheffield Groves, filed this *pro se* civil rights action under 42 U.S.C. § 1983 claiming a procedural due process violation in connection with his disciplinary hearing conducted while he was a pretrial detainee at the Milwaukee County Jail. Presently before the court are cross motions for summary judgment. For the reasons set forth below, the defendants' motion for summary judgment will be granted, and the plaintiff's motion for summary judgment will be denied.

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of

material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For a fact to be material, it must relate to a dispute that "might affect the outcome of the suit." *Id.*

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, *Anderson*, 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id.* at 248.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the nonmoving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence. *Id.* at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id.* at 323-24. Neither party may rest on mere allegations or denials in the pleadings, *Anderson*, 477 U.S. at 248, or upon conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (1989). In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record - only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

2

That both parties have moved for summary judgment, and arguing simultaneously that there is no genuine issue of fact, does not establish that a trial is unnecessary or empower the court to enter judgment as it chooses. *See* 10A Charles Alan Wright, et al § 2720 at 327-28 (3d ed. 1998). The court may grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law on the basis of the material facts not in dispute. *See Mitchell v. McCarty*, 239 F.2d 721, 723 (7th Cir. 1957). Cross motions for summary judgment do not convert a dispute into a question of law if material factual questions are involved and additional evidence may be adduced at trial which would be helpful in the disposition of the case. *See M. Snower & Co. v. United States*, 140 F.2d 367 (7th Cir. 1944). Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. The failure of one party to satisfy that burden on its own motion does not automatically indicate that the opposing party has satisfied its burden and must be granted summary judgment on the other motion. *See* 10A Charles Alan Wright, et al § 2720 at 335.

## II. UNDISPUTED FACTS

### A. Preliminary Matters

In compliance with Civil Local Rule 56.2(a), the defendants filed proposed findings of fact which identified those facts upon which there is no genuine issue and cited evidentiary material to support those propositions. The plaintiff did not file a response to defendants' motion for summary judgment or to their proposed factual findings; rather, he filed his own motion for summary judgment with proposed findings of fact. In a November 7, 2007, order this court gave the plaintiff extra time to respond to the defendants' motion and supporting material and warned the plaintiff that "if he fail[ed] to file any response to the

3

defendants' proposed findings of fact on or before November 21, 2007, 'the Court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out.'" *Groves v. Milwaukee County Jail*, Case Number 06-C-1301 (E.D. Wis. Nov. 7, 2001) (Doc. #48) (citing Civil Local Rule 56.2(e)). Inasmuch as the plaintiff failed to respond directly to the defendants' proposed findings of fact as contemplated under Civil Local Rule 56.2, the court finds that the defendants' facts are undisputed unless they were specifically contradicted by the affidavits proffered by the plaintiff in support of his own motion for summary judgment.

   The defendants, on the other hand, did properly respond to the plaintiff's proposed findings of fact in accordance with Civil Local Rule 56.2. With respect to the plaintiff's factual submissions, it is noted that some of the proposed findings of fact are not supported by affidavits that are based on personal knowledge or supported by reference to other admissible evidence. Affidavits based on "information and belief" – facts that the affiant believes are true, but which the affiant does not know are true – are improper. *Toro Co. v. Krouse, Kern & Co., Inc.*, 827 F.2d 155, 162-63 (7th Cir. 1987); *see also Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987) (courts should disregard an affidavit that does not comply with the requirements of Rule 56(e), Federal Rules of Civil Procedure). Any proposed finding of fact that is not supported by a proper affidavit or other admissible evidence cannot be a basis for this court's decision on the pending motions.

   Furthermore, the defendants note that the plaintiff has not attached the exhibits he references (Exhibits A through H) to any affidavits and suggests that the court should

disregard any proposed finding of fact that rely on any of these exhibits.[1]  *See* Defendants' Response to Plaintiff's Proposed Findings of Fact at 1 (Doc. #50).  In granting a motion for summary judgment, a court may consider any materials that would be admissible at trial, including properly authenticated and admissible documents or exhibits.  *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2001).  To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Fed.R.Civ.P. 56(e), and the affiant must be a person through whom the exhibits could be admitted into evidence.  10A Charles Alan Wright, Federal Practice and Procedure § 2722, at 379-80 & 382-84 (1998).

None of the exhibits marked A through H was submitted with an accompanying affidavit and the plaintiff has made no effort to authenticate them.  Therefore, the court will disregard Exhibits A through H and any proposed finding of fact that relies exclusively on those exhibits.

**B.  Undisputed Facts from Defendants' Proposed Findings of Fact**

1.  <u>Parties and Jurisdiction</u>

Sheffield Groves, the plaintiff, is an inmate at the Waupun Correctional Institution where he is serving two life sentences for two intentional homicide convictions that occurred in 2006. (Defendants' Proposed Finding of Fact [DPFF] ¶ 1.)  At all times relevant to this action, the plaintiff was an inmate at the Milwaukee County Jail (MCJ), awaiting trial for the above intentional homicides.  *Id.*  At the time of the incident, defendant David A. Clarke, Jr., was the elected Sheriff of Milwaukee County, Wisconsin. (DPFF ¶ 2.)

---

[1] These exhibits include excerpts from a log book (Exhibit A), an excerpt from an inmate handbook (Exhibit B), a typed document (Exhibit C), an "Inmate Summary" form (Exhibit D), a document entitled "Findings" (Exhibit E) and excerpts from the MCJ Policy and Procedural Manual (Exhibits F-H).

Defendant Captain Kevin Nyklewicz, is employed by Milwaukee County in the Sheriff's Office. (DPFF ¶ 3.) During all times relevant, he has worked at the MCJ. *Id.* On June 26, 2005, Captain Nyklewicz was assigned to the MCJ as the second shift commander from 2:00 p.m. to 10:00 p.m. *Id.* His duties consisted of handling inmate releases as well as general jail administration, but did not include the delivery of disciplinary reports to inmates prior to their hearing. *Id.* It is the responsibility of the deputy sheriff/officer working on the particular MCJ pod where the inmates are housed or in classification to hand out disciplinary reports 24 hours prior to a hearing. *Id.*

There is no policy or procedure that requires the captain to follow up with the deputy or officer who gives notice to determine if an inmate received his or her notice. (DPFF ¶ 4.) When Captain Nyklewicz handled disciplinary hearings, it was his practice and jail procedure to ask inmates at their hearing if they knew why they were at the hearing. *Id.* If they answered that they did not know, he would stop the hearing and determine if he or she had received notice. *Id.* Captain Nyklewicz did not participate in the plaintiff's June 29, 2005, disciplinary hearing. *Id.*

Captain Matthew Paradise, who is also a defendant, is employed by Milwaukee County in the Sheriff's Office. (DPFF ¶ 5.) During all times relevant, he has worked at the MCJ. *Id.* On June 26, 2005, he was assigned to the MCJ working on first and second shifts. *Id.*

Defendant Pamela Moats, is no longer employed by Milwaukee County. (DPFF ¶ 6.) However, during all times relevant, she was a Deputy Sheriff in the Sheriff's Office. *Id.*

There is no dispute that the Eastern District of Wisconsin is the proper venue for this action and that this Court has jurisdiction over this claim. (DPFF ¶ 7.)

6

2.    Facts Involving the Placement in Lockdown and Subsequent
      Disciplinary Action

On June 26, 2005, during the first shift, the plaintiff and other inmates in pod 6C of the MCJ were locked down in response to an alleged incident a day earlier in which a nurse had been threatened. (DPFF ¶ 8.) When Deputy Moats arrived at the start of second shift, the inmates where still locked down. (DPFF ¶ 9.) Deputy Moats is unaware of any policy, procedure, rule, administrative code section or general duty that required her to explain to the plaintiff why the pod was locked down. *Id.* The plaintiff maintains that Deputy Moats did not inform him why he was being locked down. (DPFF ¶ 10.) However, Deputy Moats was not involved in the decision to "lockdown" the plaintiff's pod, or the plaintiff's June 29, 2005, disciplinary hearing. *Id.*

During the second shift, the inmates on pod 6C were yelling, screaming, hitting their cell doors, rioting and threatening the staff. (DPFF ¶ 11.) According to the plaintiff, that some of the inmates were "screaming" and "kicked on their door" and yelled "fuck you" to Captain Nyklewicz when he arrived on the pod to investigate the nature of the disturbance. (DPFF ¶ 12.) The plaintiff contends that inmates were yelling and screaming, in an attempt to find out why they were "on lockdown." (DPFF ¶ 13.)

Captain Nyklewicz was not involved in the initial decision to place the inmates on pod C "on lockdown" status. (DPFF ¶ 14.) Moreover, he is not aware of a policy, procedure, rule, administrative code section or general duty that required him to explain to the plaintiff why he was "on lockdown." (DPFF ¶ 15.) Captain Nyklewicz advised the entire pod to quiet down or they would be placed on formal discipline. (DPFF ¶ 16.) After the inmates on pod 6C refused to quiet down and after making the determination that the inmates on pod

7

6C were engaging in conduct that posed a threat to the order and security of the jail, Captain Nyklewicz ordered pod 6C on formal discipline and directed that they all be moved into segregation status. (DPFF ¶ 17.) This occurred at approximately 3:55 p.m. on June 26, 2005. (Defendants' Response to Plaintiff's Proposed Findings of Fact [Defs' Resp. to PPFF] ¶ 8.) Captain Nyklewicz sought and received approval from Inspector Richard Schmidt for the formal discipline. (DPFF ¶ 18.)

On June 29, 2005, the jail commenced hearings regarding the lockdown. (DPFF ¶ 19.) The MCJ inmate handbook contains two errors regarding the rights of an inmate charged with rules violation. (DPFF ¶ 20.) Contrary to what is stated in the handbook, inmates are not given a written copy of the disciplinary hearing report within 24 hours of the violation, and inmates are not required to sign off upon receipt of the disciplinary hearing report. *Id.* Jail staff has never given an inmate a copy of the report within 24 hours of violation. (DPFF ¶ 21.) However, the jail staff is required to notify the inmate of the charges and of his or her right to a hearing at least 24 hours in advance of the hearing, pursuant to Wisconsin Administrative Code DOC 350.15(3)(c). *Id.* The inmate handbook is being revised to reflect the actual practice of the jail as well as DOC 350.15(3)(c). *Id.*

The plaintiff charges that he did not receive advance notice of his disciplinary hearing. (DPFF ¶ 22.) The plaintiff was charged with disrupting the orderly operation of the jail, threatening another person and participating in a riot. (DPFF ¶ 23.) He was found guilty and sentenced to sixteen (16) days of segregated confinement with three days credit for time served. (DPFF ¶ 24; Paradise Aff. ¶ 3.)

The plaintiff asserts that he was not allowed to call witnesses on his behalf to prove that he was not involved in the pod 6C disturbance. (DPFF ¶ 25.) He also alleges that

Sheriff Clarke failed to "train, teach, his staff at the MCJ the appropriate manner in how to handle disciplinary actions against pretrial detainees who have yet to be convicted of a crime, as well as how to go about protecting their rights under the constitution or implementing policies and procedures to assure these rights are not being abridged." (DPFF ¶ 26.) He further alleges that Sheriff Clarke "misused and abused the official power granted to him by the County in the performance of his official duties." *Id.*

With respect to Captain Nyklewicz, the plaintiff contends that he knew that "as a supervisor, he had an administrative duty and legal obligation to provide him [plaintiff] with a copy of the alleged rules he allegedly violated." (DPFF 27.) As for Captain Paradise, the plaintiff maintains that he acted "within the scope of his agency and with intention of finding plaintiff guilty of the rule infractions without so much as a shred of evidence" which "was outrageous conduct by denying due process by any and all means." (DPFF ¶ 28.)

Sheriff Clarke is not involved in the day-to-day activities of the jail, but he was aware that Sheffield Groves was an inmate at the Jail. (DPFF ¶¶ 29 and 30.) However, Sheriff Clarke was not involved in any decisions relating to the plaintiff's June 29, 2005, disciplinary hearing or the events that led up to that proceeding. (DPFF ¶ 31.)

On June 26, 2005, Corrections Officer Chad Vartanian prepared a "Rules Violation Report" regarding the above incident on pod 6C. (DPFF ¶ 32.) As there were approximately 48 men on pod 6C engaging in the threatening and dangerous behavior, Officer Vartanian filled out one report, listing the rules violated and the facts behind the rules violation, as everybody on the pod was engaging in the same behavior. (DPFF ¶ 33.) Officer Vartanian then photocopied each report and individually wrote the names of the offending inmate on each report. (DPFF ¶ 34.)

On or before June 28, 2005, Deputy Brian Morgan went cell to cell to deliver a copy of the report to each inmate. (DPFF ¶ 35.) The plaintiff denies receiving a copy of the disciplinary report, although he remained in a single segregated cell until his disciplinary hearing on June 29, 2005. (DPFF ¶¶ 36 and 37.)

The plaintiff appeared before Captain Matthew Paradise for his hearing. (DPFF ¶ 38.) The charges were participating in a riot/inciting a riot, threat to another person and committing any act that disrupts the orderly operation of the jail. (DPFF ¶ 39.) Captain Paradise sustained the charges and the plaintiff was sentenced to sixteen days of disciplinary confinement, with three days of credit for time served. (DPFF ¶ 40.) Captain Paradise does not recall the specific facts of the plaintiff's June 29, 2005, disciplinary hearing. (DPFF ¶ 41.) However, his usual practice at disciplinary hearings is to listen to what the inmate tells him about the event as well as what he learns from jail staff and to make his ultimate decision based on what he believes to be the most credible, realistic and believable version of the events. (DPFF ¶ 42.) As part of his investigation in the disciplinary hearing, Captain Paradise learned that, on June 26, 2005, the inmates on pod 6C were engaging in threatening behavior toward a nurse working that pod on June 26, 2005, during first shift. (DPFF ¶ 43.) He was also aware that the inmates were placed "on lockdown" and that the inmates were kicking their cell doors and yelling threats to staff. (DPFF ¶ 44.) The inmates were screaming "you know the deputy that got his ass whooped" and "we can overtake them all" and the inmates were threatening to stab staff with pencils. *Id.*

When Captain Paradise conducts a disciplinary hearing, he typically asks the inmate if he or she knows why he or she is at the hearing. (DPFF ¶ 45.) If the inmate says he does not, Captain Paradise will ask if he or she was served with notice. *Id.* If the inmate

says he was not, Captain Paradise asks the inmate if he or she would like to waive service. *Id.* If the inmate says no, Captain Paradise will have him served and continue the hearing for 24 hours. *Id.* If an inmate wants to go forward and waive service, Captain Paradise will proceed with the disciplinary hearing. (DPFF ¶ 46.) Next, Captain Paradise will inquire further into the incident to determine whether the inmate's version of the facts, includes relevant information provided by a witness. *Id.* If he determines that the witness does not pose a security risk and that the witness' testimony is relevant and exculpatory, Captain Paradise would investigate that information. *Id.*

The plaintiff's response to Defendants' First Set of Combined Discovery No. 6 does not indicate that Sheriff Clarke had any role in what happened at the MCJ between June 26, 2005, through June 29, 2005. (DPFF ¶ 47.) Deputy Moats is not identified in the "Causes of Action" section of the complaint or included as an individual who violated plaintiff's rights under § 1983. (DPFF ¶ 48.)

In the plaintiff's responses to Defendants First Set of Combined Discovery, he identified the names of his witnesses, but failed to describe the information each witness had. (DPFF ¶ 49.) Notably, a deputy reviewed the inmate handbook with the plaintiff when he was booked into the MCJ. (DPFF ¶ 51.)

## C. Undisputed Facts from Plaintiff's Proposed Findings of Fact[2]

Abdul Muhammed, Amonte Jackson, Miguel Segarra were housed on pod 6-C between June 26, 2005, and July 4, 2005. (Plaintiff's Proposed Findings of Fact in Support of Motion for Summary Judgment [PPFF] ¶ 2; Defs' Resp. to PPFF ¶ 2.)

---

[2] Any of plaintiff's proposed findings of fact that are duplicative of the defendants' proposed findings of fact are not included in this section.

The plaintiff never received a written copy of a disciplinary hearing report within 24 hours of the violation. (PPFF ¶ 9; Def.'s Resp. to PPFF ¶ 9.) The report should include the specific rule(s) violated that caused the plaintiff to be placed on segregation. *Id.* Moreover, he was not given "notification in advance" of his disciplinary hearing.[3] (PPFF ¶ 13; Defs' Resp. to PPFF ¶ 13.)

The plaintiff appealed the disciplinary hearing decision sentencing him to sixteen days confinement but did not receive a response to the appeal. (PPFF ¶ 17; Defs' Resp. to PPFF ¶ 17.)

### III. ANALYSIS OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The defendants argue that the plaintiff's due process claims should be dismissed because the plaintiff failed to exhaust his administrative remedies. Additionally, they contend that summary judgment should be granted on their motion because: (1) defendants Clarke, Moats and Nyklewicz were not personally involved in the alleged wrongdoing; (2) official capacity claims cannot be maintained against the defendants because no policy or custom played a part in the alleged constitutional violation; (3) plaintiff's substantive due process claim fails because the pod 6C lockdown and the plaintiff's sentence to segregated confinement were not imposed as a punishment for the crime for which he was being detained; (4) plaintiff's procedural due process claim fails because plaintiff was not harmed by any of the alleged procedural shortcomings; and (5) the defendants are entitled to qualified immunity.

### A. Exhaustion of Administrative Remedies

---

[3] The defendants state that there is evidence in the record that disciplinary reports were prepared and delivered to the plaintiff on or before June 28, 2005, but they state that they do not dispute PPFF ¶ 13 "for purposes of this motion only." *See* Defs' Resp. to PPFF ¶ 13.

The Prison Litigation Reform Act of 1995 (PLRA), Pub. L. 104-134, 110 Stat. 1321 (1996), provides that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997(e)a.

Section 1997e applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner's failure to exhaust administrative remedies before bringing a § 1983 suit is an affirmative defense, which the defendants must raise. *Jones v. Bock*, 127 S. Ct. 910 (2007). Moreover, it is the defendants' burden to prove that the plaintiff failed to exhaust his administrative remedies. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir.2006); *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir.1999).

A prisoner has not exhausted his remedies unless he completes the administrative process by following the rules established by the state for that purpose. *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). Pursuant to Wis. Admin. Code 350.15(3)(j):

> (j) The inmate shall be notified of his or her right to appeal the hearing officer's or committee's decision and of the Jail's procedure for making an appeal.

The inmate handbook of the MCJ contains the following provisions on appealing the hearing officer's decision:

Case 2:06-cv-01301-CNC   Filed 02/25/08   Page 13 of 23   Document 55

1.    Submit an appeal in writing to the Deputy Inspector (Administrative)    within fourteen (14) days of receiving the hearing officer's decision.

2.    The Deputy Inspector (Administrative) who will make a decision within five (5) business days of receiving your appeal will review your appeal. A written copy of the decision will be forwarded to you. The Detention Bureau Deputy Inspector's decision is final.

*See* Defendants' Brief in Support at 20.

In the brief supporting their motion for summary judgment, the defendants argue that the plaintiff failed to exhaust his administrative remedies because he failed to appeal the June 29, 2005, disciplinary decision.  *See* Defendants' Brief in Support of Motion for Summary Judgment at 20.  However, the defendants did not dispute plaintiff's proposed finding of fact stating that he filed an appeal following the disciplinary hearing decision but did not get a response.  Rather, the defendants stated that they did not dispute this finding for purposes of this motion and that it was not an "issue of material fact for this case."  That the undisputed evidence establishes that plaintiff did file an appeal of the denial of the June 29, 2005, disciplinary decision dooms the defendants' affirmative defense of exhaustion.  Thus, the defendants are not entitled to dismissal of the plaintiff's claims on this ground.

## B. Official Capacity/Municipal Liability Claims

The plaintiff has sued each of the individual defendants in his or her official capacity along with the Milwaukee County Jail, a municipal entity of Milwaukee County. Because "[a]n official capacity suit against a municipal official is merely another way of asserting a claim against the municipality," the plaintiff's claims actually boil down to a claim against Milwaukee County.  *Gibson v. City of Chicago*, 910 F.2d 1510, 1519 n. 14 (7th Cir.1990); *see also Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114

14

(1985) (holding that a defendant can only be sued in his official capacity under § 1983 if he acted pursuant to an official policy or custom in causing the constitutional injury); *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir.1986) (finding that an action against an individual defendant in his official capacity operates as a claim against the government entity itself).

Although municipalities and other local government units are included among those persons to whom § 1983 applies, "a municipality cannot be held liable under § 1983 on a respondeat superior theory. *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 690-91 (1978). To establish municipal liability under § 1983, a plaintiff must demonstrate the existence of a municipal policy or custom that caused the deprivation of his constitutional rights. *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 694 (1978); *Caldwell v. City of Elwood, Ind.*, 959 F.2d 670, 673 (7th Cir. 1992) (court noted that "a section 1983 complaint against a municipality must plead the existence of a custom or policy that was the direct cause of the deprivation of a federal right"). The policy or custom in question must be "the moving force of the constitutional violation." *Monell*, 436 U.S. at 694; *see also Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 400 (1997) (reasoning that "Congress did not intend to impose liability on a municipality unless deliberate action attributable to the municipality itself is the moving force behind the plaintiff's deprivation of federal rights") (internal quotations omitted).

In light of these underlying principles, a plaintiff has three means of establishing municipal liability under *Monell*: (1) the plaintiff must establish the existence of "an express [municipal] policy that, when enforced, causes a constitutional deprivation"; (2) the plaintiff must prove "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the

force of law" that causes a constitutional violation, or (3) the plaintiff must show that "the constitutional injury was caused by a person with final policymaking authority." *Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997) (quoting *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)).

As noted previously, the plaintiff failed to file a response to the defendants' motion for summary judgment. As a result, he has not countered the defendants' arguments with respect to the official capacity claims against the individual defendants or the municipal liability claim against Milwaukee County. Moreover, he has not pointed to evidence supporting these claims. Also, the court's review of the record did not uncover evidence that the alleged constitutional violations were caused by an express policy or a widespread practice or custom. Indeed, not one shred of evidence has been put forth by plaintiff which could be said to create an inference that any policy or custom of Milwaukee County played a roll in the event underlying his claims.

Moreover, the record is without evidence showing that the alleged constitutional violations were caused by a person with "final policymaking authority." The only named defendant with the authority to set policy for Milwaukee County is Sheriff Clarke, and the undisputed evidence shows that he played no role in any of the disciplinary decisions pertaining to the plaintiff nor was he involved in the day-to-day operations of the jail. *See* PPFF ¶¶ 29-31.

The plaintiff charges that defendant Sheriff Clarke "failed to train, teach his staff at the MCJ the appropriate manner in how to handle disciplinary actions against pre-trial detainees. . . ." (DPFF ¶ 26.) To the extent that the plaintiff contends that Sheriff Clarke's failure to train amounted to a municipal policy for *Monell* purposes, such claim also fails on

16

summary judgment because the plaintiff has not put forth a scintilla of evidence showing that "policymakers deliberately chose a training program which would prove inadequate." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (municipal liability under a failure to train theory should only be imposed when the degree of fault rises to the level of "deliberate indifference" to rights, that is, where the municipality's "choice to follow a course of action is made from among various alternatives by . . . policymakers) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)).

   For all of these reasons, the plaintiff has failed to satisfy his burden of proof with respect to his municipal liability claim. Therefore, the MCJ will be dismissed from this action as will the official capacity claims against the individual defendants.

## C. Substantive Due Process Claim

   The defendants argue that any substantive due process claim based on plaintiff's placement in lockdown segregation for three days and a sentence of sixteen days of segregation (with credit for three days of time served) must be dismissed as it has no support in the record.[4] Although pretrial detainees may not be punished for the crime for which they are being held, they may be disciplined for violating prison regulations designed to maintain order and security. *Rapier v. Harris*, 172 F.3d 999, 1003 (7th Cir. 1999). An action against a pretrial detainee is unlawful punishment if it is (1) motivated by an intent to punish; (2) not reasonably related to a non-punitive purpose such as maintaining security and

---

[4] The court did not recognize the existence of a substantive due process claim in the screening order of March 14, 2007, nor has the plaintiff asserted such a claim in his motion for summary judgment. Nevertheless, because of the plaintiff's *pro se* status, the court will address the defendants' argument in the event that the plaintiff intended for his complaint to include such a claim.

17

order; or (3) an exaggerated response to that interest.  *Bell v. Wolfish,* 441 U.S. 520, 538 (1978); *Rapier*, 172 F.3d at 1005.  In determining whether a restriction or condition is reasonably related to an institution's interest in maintaining security and order, courts must defer to the expertise of prison official, unless it is clear that they have overreacted.  *Bell*, 441 U.S. at 540.

The defendants contend that there are no allegations or evidence in the record to indicate that the lockdown and the plaintiff's sentence to segregated confinement were imposed as punishment for the crime for which he was being detained.   Indeed, the defendants maintain that the undisputed evidence shows that the lockdown and subsequent placement in segregation were in response to a threat to the order and security of the MCJ.  *See* PPFF ¶ ¶ 11, 12, 16, 17 and 39.

The plaintiff fails to contest the defendants' arguments or factual propositions regarding the lockdown and segregation as he has not responded to the defendants' motion for summary judgment or to the defendants' proposed findings of fact.  Hence, the defendants are entitled to summary judgment on the plaintiff's claim that his placement in lockdown and segregation violated his substantive due process rights.

## D.  Procedural Due Process

Although not delineated as such, there appear to be two components to plaintiff's procedural due process claim.  The first concerns whether the plaintiff's due process rights were violated when he was placed in lockdown/segregation for three days prior to his disciplinary hearing.  The second component relates to the alleged inadequate procedures that took place in connection with the disciplinary hearing which resulted in a sixteen-day sentence to segregated confinement (with credit for three days time served).

18

1.    Lockdown/Segregation Without Prior Hearing

It is undisputed that the plaintiff, and all other inmates on pod 6C of the MCJ, were placed in lockdown on June 26, 2005, in response to an alleged incident a day earlier in which a nurse was threatened. Thereafter, the plaintiff and the other pod 6C inmates were placed on "formal discipline" and moved into segregation status for two days after Captain Nyklewicz determined that they engaged in conduct that posed a threat to the order and security of the jail. No hearing was held prior to placing plaintiff in this form of lockdown/segregation status.

The Court of Appeals for the Seventh Circuit has held that "a pretrial detainee cannot be placed in segregation as punishment for a disciplinary infraction without notice and an opportunity to be heard" but also recognized that "no process is required if he is placed in segregation not as punishment, but for managerial reasons." *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-41 (1979); *Rapier v. Harris*, 172 F.3d 999, 1002-06 (7th Cir. 1999)). The appellate court explained that "managerial reasons" could include overcrowding, protecting a detainee from himself or other inmates or to protect jail staff from the detainee's "violent propensities." *Higgs*, 286 F.3d at 438. More recently, the court of appeals has ruled that a pretrial detainee's placement in segregation for two days without a prior hearing did not violate his due process rights, where corrections officers had reason to believe that the detainee was disrupting a jail headcount which had the potential to interfere with jail security and discipline. *Holly v. Woolfolk*, 415 F.3d 678 (7th Cir. 2005). Similar to the instant case, the detainee in *Holly* received a hearing after two days in segregation. *Id.* at 680. In finding no due process violation, the appellate court noted that "the due process clauses do not confer a right to a pre-deprivation hearing in every case in

which a public officer deprives an individual of liberty or property" and analogized that two-day detention to the 48-hours in which a person can be arrested and held before being charged with a crime or given a hearing. *Id.* at 680-81.

Based on this precedent, the defendants assert that no process was required before placing the plaintiff in lockdown/segregation status for three days because the undisputed evidence illustrates that his confinement was in response to a security threat and was not punitive in nature. The plaintiff, who has the burden to come forward with evidence to support his claim, has not challenged the defendants' arguments in this regard and has not contradicted it with evidence suggesting that the motivation behind the lockdown/segregation was punitive rather than an emergency response to a jail security threat. Hence, the defendants are entitled to summary judgment on this claim.

2.      Disciplinary Hearing

The complaint charges that the plaintiff's due process rights were violated because he did not receive sufficient notice of his disciplinary hearing; he did not receive a copy of the misconduct report charge; he was not allowed to call witnesses on his behalf at the hearing; and he was found guilty based upon "no evidence." (Complaint at ¶ ¶ 23-26.) Pretrial detainees may be punished for infractions committed while awaiting trial, but there must be adequate procedural protections in place. *Rapier*, 172 F.3d at 1003. Under the criteria set forth in *Wolff v. McDonnell*, 418 U.S. 539, 564-566 (1974), as applied to pretrial detainees through later cases, due process requires that the prisoner receive adequate written notice of charges, an opportunity to present testimony and documentary evidence to an impartial decision-maker, and a written explanation for the discipline that is supported by

20

"some evidence" in the record.[5]  However, the harmless error analysis applies to alleged due process violations in a prison disciplinary proceeding.  *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003).

The crux of plaintiff's claim is that he was not given a rules violation report 24 hours before his disciplinary hearing which precluded him from mounting a defense by calling witnesses on his behalf.  While "[i]nmates have a due process right to call witnesses at their disciplinary hearings when doing so would be consistent with institutional safety and correctional goals," *Wolff*, 418 U.S. at 566, "there is no right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary," *Forbes v. Trigg*, 976 F.2d 308, 317-18 (7th Cir. 1992).  The parties dispute whether the plaintiff requested the ability to call witnesses at his hearing.  However, even if that dispute were resolved in plaintiff's favor, he has not shown how he was harmed by the inadequate procedures at his disciplinary hearing.  In other words, the plaintiff has not shown how timely notice or his ability to call witnesses would have aided his defense.  Absent from the plaintiff's affidavit or other evidence in the record is any indication of which witnesses plaintiff would have called, what the witnesses' testimony might have been or how that testimony would have aided the plaintiff's defense.[6]  Moreover, the plaintiff has not explained how the untimely notice and not receiving a copy of the misconduct

---

[5] Plaintiff also argues that he didn't get a copy of the rules violation report "within 24 hours of the charges."  There is no such requirement under *Wolff*, and the fact that the jail's procedures appeared to give him that right does not in and of itself establish a due process violation.  *See Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993) (the failure of a state or local government to follow its own procedures does not necessarily violate due process).

[6] While the plaintiff has named three other inmates housed in pod 6C (PPFF ¶ 2), he has not stated that he would have called these individuals as witnesses at his hearing nor has he specified what, if any, relevant testimony these individuals would have provided.

report prior to the disciplinary hearing interfered in any other way with his ability to marshall a successful defense.

Finally, plaintiff argues that there was no evidence supporting the disciplinary charges against him. Procedural due process requires that "some evidence" support the decision by the jail disciplinary office. *Henderson v. U.S. Parole Board Comm'n.*, 13 F. 3d 1073, 1077 (7th Cir 1994). In reviewing a decision for "some evidence," courts need not conduct an examination of the entire record, independently assess the credibility of witnesses or weigh the evidence. They need only determine where the disciplinary officer's decision has some factual basis. *Walpole v. Hill,* 472 U.S. 445 (1985); *Meeks v. McBride*, 81 F. 3d 717, 720 (7th Cir. 1996). Here, it is clear that "some evidence" supports Captain Paradise's determination that the plaintiff was guilty. Captain Paradise learned through his investigation that all the inmates on Pod 6C were engaging in threatening behavior, were kicking, screaming and yelling. (DPFF ¶¶ 43 and 44.) Also, a review of Exhibit A – the "Findings" of the disciplinary hearing – attached to the affidavit of Captain Paradise indicates that "defendant states that he (Groves) had nothing to do with the disturbances." (DPFF ¶ 38.) Although Captain Paradise does not recall the specifics of plaintiff's hearing, the evidence shows that defendant Paradise considered plaintiff's position that he had nothing to do with the disturbance as well as the information he learned through his investigation. Defendant Paradise stated that his ultimate decision is based on what he believes to be the most credible, realistic and believable version of the events. (Affidavit of Matthew Paradise at ¶ 10.) Furthermore, the plaintiff does not deny that he was given a full opportunity to testify.

22

In view of the above, the court finds that there was "some evidence" supporting the disciplinary decision.[7]

## IV.  CONCLUSION

Having concluded that the defendants are entitled to summary judgment on all of the plaintiff's claims, the court acknowledges the plaintiff's arguments concerning personal involvement and qualified immunity.  However, in view of the foregoing findings, the plaintiff cannot prevail on his motion for summary judgment.

Now, therefore,

**IT IS ORDERED** that the defendants' motion for summary judgment (Doc. # 28) is **GRANTED.**

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (Doc. #40) is **DENIED**.

**IT IS FURTHER ORDERED** that this action be **DISMISSED,** with prejudice.

Dated at Milwaukee, Wisconsin, this 25th day of February, 2008.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. DISTRICT JUDGE

---

[7] To the extent that the plaintiff's claim can be construed as alleging that the written findings were inadequate or that he did not receive a copy of the findings, plaintiff again has not demonstrated that he was harmed by any deficiency or that his ability to file an appeal was hindered.  Indeed, he acknowledges that he was able to file an appeal of the disciplinary decision.

23